**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

ROBERT MOODY,

                Plaintiff,

     v.

D. WARD, et al.,

           Defendants.

CIVIL ACTION NO.: 2:22-cv-88

## <u>REPORT AND RECOMMENDATION</u>

Defendant Mark Byron filed a Motion for Summary Judgment on September 1, 2023. Doc. 64. Plaintiff filed a Response in opposition. Doc. 66. Defendant Byron filed a Reply addressing Plaintiff's procedural fairness arguments. Doc. 68. Plaintiff filed a Surreply, arguing lack of consent and procedural unfairness. Doc. 70. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment. Finally, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendant Byron and **DIRECT** the Clerk of Court to enter the appropriate judgment and **DENY** Plaintiff *in forma pauperis* status on appeal.

**BACKGROUND**

I.      **Plaintiff's Allegations and Procedural History**

Plaintiff filed this action asserting a state law assault claim against Defendant Byron on September 12, 2022.  Doc. 1.[1]  Plaintiff discovered an infection on his penis, and Defendant Byron performed the surgery to remove the infection.  Id.  Plaintiff alleges Defendant Byron amputated Plaintiff's penis during this procedure and the surgery did not cure his infection.  Id. As relief, Plaintiff requests money damages.  Id. at 10–11.

The parties completed discovery related to the state law assault claims against Defendant Byron.  Defendant Byron filed this Motion for Summary Judgment on September 1, 2023. Doc. 64.  In his Motion, Defendant Byron argues Plaintiff cannot recover on his claim because Plaintiff gave valid consent for the circumcision procedure and any allegations for professional negligence are not supported by expert testimony.  Doc. 64 at 3.  In Plaintiff's Response, he argues he did not discuss the risks and benefits of the procedure with Defendant Byron, the consent form did not detail all of the procedures, and the consent form did not include a disclaimer stating Defendant Byron could not guarantee the results.  Doc. 70 at 3.  Plaintiff also argues he was not allowed to attend or view witness depositions, limiting his ability to gather evidence.  Doc. 66 at 2.

II.     **Undisputed Material Facts**

It is important to note at the outset specific facts pleaded in a sworn complaint must be considered for the purposes of summary judgment.  Sconiers v. Lockhart, 946 F.3d 1256, 1262 (11th Cir. 2020); see also Burke v. Bowns, 653 F. App'x 683, 695 (11th Cir. 2016) ("We also

---

[1]      Plaintiff is vague about the nature of the claim against Defendant Byron.  The Court conducted a frivolity review screening and construed the claim as a state law assault claim against Defendant Byron. Doc. 8.  Plaintiff never challenged this construction, even though he had ample opportunity to do so.

credit the specific facts pled in [a plaintiff's] sworn complaint when considering his opposition to summary judgment.") (quoting Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014)).  Defendant submitted a Statement of Material Facts ("Defendant's SMF") in support of his Motion for Summary Judgment, in accordance with the Federal Rule of Civil Procedure 56 and Local Rule 56.1.  Doc. 64-1.  Defendant's SMF is supported by: prison clinical notes, doc. 64-2; the affidavit or Mark Byron, doc. 64-3; Defendant Mark Byron's clinical notes, doc. 64-4; Plaintiff's responses to Defendant's first interrogatories, doc. 64-5; consent forms, doc. 64-6; Plaintiff's answers to first request for admissions, doc. 64-7; the deposition of Joseph A. Lanzone, doc. 64-8; and the expert report of Thomas E. Shook, doc. 64-9.  Plaintiff has not responded to Defendant's SMF.  However, when considering the record at summary judgment, "all justifiable inferences are to be drawn" in favor of the non-movant.  Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (internal quotations omitted) (quoting Tolan v. Cotton, 572 U.S. 651 (2014)).  Thus, the Court identifies the following undisputed, material facts for the purposes of evaluating Defendant's Motion for Summary Judgment:

Plaintiff is a current inmate at the Federal Correctional Institution in Jesup, Georgia. Doc. 1.  Plaintiff first noticed an infection near the tip of his penis in January 2020.  Id. at 3. Plaintiff presented to prison health services several times seeking treatment for his condition.  Id. Plaintiff's primary care doctor, Dr. Martin, diagnosed him with phimosis in June 2020.  Doc. 64-2.  Plaintiff was prescribed a series of unsuccessful treatment options, including steroid injections and topical creams.  Plaintiff was eventually referred to a urologist, Dr. Mark Byron. Doc. 1 at 4.  Dr. Byron first examined Plaintiff on March 1, 2021.  Id.  At this visit, Plaintiff and Dr. Byron discussed the pros and cons of circumcision, and Plaintiff agreed to circumcision.

Doc. 64-3.  Dr. Byron presented circumcision as the best option due to Plaintiff's medical history and the ineffectiveness of the less invasive treatment options he received at the prison.  Id.

The surgery took place at Wayne Memorial Hospital on January 21, 2022.  Doc. 1 at 5. Plaintiff presented to the hospital for a circumcision.  Plaintiff mentioned to Defendant Byron he was previously circumcised.  Doc. 64-5 at 16.  Defendant Byron explained to Plaintiff phimosis could occur regardless of whether he was previously circumcised.  Doc. 64-3.  Defendant Byron re-examined Plaintiff, and they agreed to continue with the procedure.  Doc. 64-5 at 16.  The hospital gave Plaintiff a written consent form for the surgery, which he signed.  Doc. 64-7 at 7. The written consent form listed the following procedures: circumcision, cystoureteroscopy, and bilateral retrograde.  Doc. 64-6.  Defendant Byron preformed the procedures listed on the consent form, and there were no significant complications.  Doc. 64-3.

Plaintiff presented to prison health services six days after the surgery, complaining about the results of the surgery and the appearance of his penis.  Doc. 64-2.  Plaintiff's primary care doctor, Dr. Martin, examined Plaintiff and saw no sign of post-surgical compromise.  Id. at 3. Defendant Byron saw Plaintiff for a post-surgical follow-up visits on February 14, 2022, and again on June 23, 2022.  Doc. 64-3.  Defendant Byron did not observe any change in the length of Plaintiff's penis.  Doc. 64-3, 64-4.  Plaintiff was referred to another urologist, Dr. Joseph Lanzone.  Dr. Lanzone examined Plaintiff and noted Plaintiff's penis was normal, other than patient's obesity and some tightening of the skin.  Doc. 64-2 at 9.  Plaintiff has not seen any other physicians since his visit with Dr. Lanzone.  Doc. 64-7 at 9.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the non-moving party] is merely colorable or is not significantly probative summary judgment must be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the non-moving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the non-moving party's case or the non-moving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences which can be drawn from the record in a light most favorable to the non-moving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

**DISCUSSION**

Defendant argues he is entitled to summary judgment on Plaintiff's state law assault claim because Defendant obtained valid consent to perform the surgery. Defendant also argues many of Plaintiff's allegations are medical negligence claims and are not supported by expert testimony. Doc. 64-1 at 4.

I.    **Plaintiff Consented to the Procedure, and Defendant is Entitled to Summary Judgment**

Georgia law recognizes consent to the physical contact between physician and patient as an absolute defense to an assault or battery claim. "In the relationship of doctor and patient, as in other situations involving a touching of another's person, consent to the act by the person affected negates the contact as an actionable tort." Mims v. Boland, 138 S.E.2d 902, 906 (Ga. Ct. App. 1964). Consent encompasses two distinct legal principles, "basic" consent and "informed" consent. "A medical provider's failure to obtain proper informed consent sounds in professional negligence and requires an expert affidavit . . . . With respect to basic consent, medical touching without consent constitutes the intentional tort of battery for which an action will lie." Paden v. Rudd, 669 S.E.2d 548, 550 (Ga. Ct. App. 2008). "Under Georgia law, a plaintiff may recover for a medical battery by establishing either: (i) that there was a lack of consent to the procedure performed; or (ii) that the treatment was at substantial variance with the consent granted." Morton v. Wellstar Health System, Inc., 653 S.E.2d 756, 757 (Ga. Ct. App. 2007).

The undisputed material facts show Plaintiff provided basic consent for the procedure. Since Plaintiff brought a medical assault claim against Defendant Byron, only basic consent is required for the procedure. Defendant Byron obtained valid basic consent to perform the surgery. Defendant attached a copy of the signed consent form to his Motion. Doc. 64-6. The

consent form lists the procedures Plaintiff agreed to as: circumcision, cystoureteroscopy, and bilateral retrograde.  Id.  Cystoscopy and ureteroscopy are procedures performed by urologists to look inside the urinary tract using an optical instrument.  A retrograde is an imaging test that uses x-rays to look at the bladder, ureters, and kidneys.  The consent form is signed by Plaintiff, the physician, and a witness nurse.

There is no indication Plaintiff withdrew consent for the procedure at any time.  Plaintiff states in his Response he never discussed the pros and cons of the procedure with Defendant Byron because he repeatedly informed Defendant Byron he was circumcised at birth.  Doc. 70 at 3.  Plaintiff states he presented at Wayne Memorial Hospital and when asked by Defendant Byron if he knew what he was there for, Plaintiff stated he was there for a circumcision.  Id. at 4.  Plaintiff mentions he considered calling off the surgery prior to Defendant Byron re-examining him.  Id.  Upon re-examination, Defendant Byron informed Plaintiff he would do a "nontraditional circumcision," and Plaintiff responded by saying, "[Y]ou can't take off much, you'll hurt me."  Id.  Plaintiff agreed to the procedure and signed the surgical consent form.  Plaintiff provided basic consent for the procedure and never withdrew consent.

Plaintiff argues he was not allowed to fully participate in discovery.  Plaintiff states he was not informed of Dr. Lanzone's deposition until he received the deposition transcript after the fact.  Id. at 2.  However, Defendant made several attempts to notify Plaintiff of the deposition to afford him an opportunity to participate.  Defendant points out Plaintiff was properly noticed via mail sent to FCI Jesup, the same notice was sent to prison officials via fax, and Defendant exchanged calls and emails with the prison regarding scheduling Dr. Lanzone's deposition.  Doc. 68 at 2.  Defendant also shared call-in information with the prison.  Defendant also contends Plaintiff still had the option to serve written questions as a way to participate in the

deposition.  Id.  Even though Plaintiff still did not learn of the deposition until after it took place, Defendants made every effort to notify Plaintiff of the deposition and complied with the Federal Rules of Civil Procedure.  Additionally, Plaintiff has made no attempts to refute any facts raised in the testimony from these depositions to challenge Defendant's Motion.

Plaintiff argues the procedures performed were unnecessary because he was previously circumcised.  However, Plaintiff had been suffering from phimosis for almost a year by the time of his initial visit with Defendant Byron.  Doc. 64 at 3.  Plaintiff attempted several different treatment options at the prison before he was referred to Defendant Byron.  Id.  Upon meeting with Plaintiff and examining the spread of the infection, Defendant informed Plaintiff circumcision was the best course of treatment.  Id. at 4.  Even when Plaintiff informed Defendant he had previously been circumcised, Defendant reexamined Plaintiff and informed him phimosis can occur even if he had a prior circumcision and he would be performing a "nontraditional circumcision."  Id.; Doc. 70 at 4.  The undisputed material facts show Plaintiff previously voiced this concern with Defendant and Defendant explained the necessity of the treatment to Plaintiff before Plaintiff agreed to move forward with the procedure.  Plaintiff has not raised any genuine dispute of material facts as to the necessity of the procedure.

Plaintiff also argues he never discussed the risks and benefits of the procedure with Defendant Byron.  Doc. 70 at 3.  Plaintiff states he never spoke about the risks and benefits of circumcision because he told Defendant Byron he was circumcised at birth.  Id.  Plaintiff's arguments based on informed consent are not applicable to his assault claim.  Informed consent "involves a medical professional fully informing a patient of the risks of and alternatives to the proposed treatment so that the patient's right to decide is not diminished by a lack of relevant information."  Pope v. Davis, 582 S.E.2d 460, 462 (Ga. Ct. App. 2003).  As discussed

previously, arguments about informed consent are only relevant in professional negligence claims and require an expert affidavit.  Plaintiff's arguments related to discussing the risks and benefits of his procedure are not relevant to his assault claim.

Alternatively, Plaintiff attempts to argue he did not consent to the circumcision because he acted under duress.  "As a general rule, if a person consents to undergo a medical procedure, the physician cannot be liable for battery unless the consent was not freely obtained or was obtained by fraud."  Petzelt v. Tewes, 581 S.E.2d 345, 347 (Ga Ct. App. 2003).  In his Response, Plaintiff briefly mentions he agreed to the procedure under duress.  Doc. 70 at 4.  However, "[d]uress must come from without, and not from within.  It must be exerted by the other person or his agent, and [cannot] be a creation of the mind of the person claiming his will has been restrained by fear."  Mabou v. Eller, 502 S.E.2d 760, 763 (Ga. Ct. App. 1998).  Plaintiff states he was under duress due to the pain from his infection and not due to any external pressure applied by Defendant Byron.  Doc. 70 at 4.  There is no indication consent for the procedure was obtained through duress or fraud.  Construing the facts in a light most favorable to Plaintiff, Plaintiff consented to the procedure.

Plaintiff also argues he only consented to the cystoscopy and he could not properly read the consent form because of his dyslexia.  Doc. 70 at 3.  Plaintiff states the nurse informed him the consent form was only for the cystoscopy and he did not consent to the circumcision.  Id. However, "consent to treatment can be shown by a writing or express words demonstrating a patient's assent to the treatment; it may also be shown by acts and conduct.  Consent may be implied from voluntary submission to treatment with full knowledge of what is going on."  Pope, 582 S.E.2d at 462.  Plaintiff's own recollection of the events on the day of the procedure show he voluntarily submitted to the procedure with full knowledge.  Defendant Byron asked Plaintiff if

he knew what he was there for when Plaintiff arrived at the facility.  Plaintiff states he said he was there for a circumcision.  Doc. 70 at 4.  After Defendant Byron reexamined Plaintiff and informed him he would perform a "nontraditional circumcision," Plaintiff agreed and said, "[W]e thought we were all on the same page at this point."  Id.  Plaintiff's own actions show he knew he would be getting a circumcision and even discussed his concerns about the procedure with Defendant Byron before agreeing to proceed.  There is no genuine dispute regarding Plaintiff's consent to the performed procedure.

Defendant has also shown the procedure performed was not at a substantial variance with the consent granted.  Plaintiff alleges Defendant Byron amputated his penis and this was never authorized.  As stated previously, Plaintiff agreed to circumcision, cystoureteroscopy, and bilateral retrograde on the signed surgical consent form.  Circumcision was presented as Plaintiff's best treatment option when Defendant Byron first met him.  Doc. 64-3.  In the post-op visit notes, Defendant Byron noted he explained to Plaintiff he had not completely healed from the procedure yet and upon examination there was no change in the length of his penis.  Doc. 64-4 at 11.

Additionally, testimony from Dr. Lanzone supports Defendant's contention the procedure was within the confines of the obtained consent.  In Plaintiff's later visit with Dr. Lanzone, Dr. Lanzone noted Plaintiff's penis was "essentially normal."  Doc. 64-2 at 9.  Dr. Lanzone also testified during his examination he did not see any signs Defendant Byron had mutilated the Plaintiff in any way or he performed anything other than the circumcision or cystoscopy.  Doc. 64-8 at 11, 14.[2]  Dr. Lanzone pointed out Plaintiff's previous medical conditions, diabetes and obesity, contributed to the scarring and healing process from the procedure.  Doc. 64-8 at

---

[2]      Plaintiff notes he was not informed of Dr. Lanzone's deposition but provides no objection to the admissibility of Dr. Lanzone's testimony.  Doc. 70.

14–15.  The undisputed material facts show Defendant performed a procedure within the confines of the obtained consent.

The undisputed material facts show Plaintiff provided basic consent for Defendant to perform a circumcision.  The record shows Defendant Byron did not perform anything other than the agreed upon procedure and the procedure performed was not at a substantial variance with the consent granted.  Therefore, I **RECOMMEND** the Court **GRANT** summary judgment to Defendant on Plaintiff's state law claim for assault.

## II.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal.  See Fed. R. App. P. 24(a)(3) (noting trial court may certify an appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.

2001)); see also Brown v. United States, Nos. 4:07-cv-085, 40:3-cr-001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendant Byron's Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment, **DIRECT** the Clerk of Court to enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A

party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 4th day of March, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA